**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **V.** | ) | **Docket No.** |
| | ) | **10 Cr. 00602 (KMK)** |
| | ) | |
| | ) | |
| **NARCISA VELIZ NOVACK,** | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Now comes the Defendant, Narcisa Veliz Novack, by and through counsel, Howard E. Tanner, Esq., Tanner & Ortega, L.L.P., and respectfully submits this Memorandum in Aid of Sentencing.

1.        **Procedural History and Facts**

On July 12, 2010, the defendant, Narcisa Veliz Novack, was arrested at her Fort Lauderdale residence and subsequently indicted in a multiple count indictment charging her and her brother, co-defendant Cristobal Veliz, with Racketeering and Racketeering Conspiracy, alleging the felony murders of her husband, Ben Novack, and of her mother-in-law, Bernice Novack, interstate transportation of stolen property, money laundering, obstruction of justice, stalking and other charges.

On June 22, 2012, after an approximately nine week trial by jury, Ms. Novack was convicted on twelve out of thirteen counts submitted to the jury. She was acquitted of Violent Crime in Aid of Racketeering: Felony Murder of Ben Novack.

The indictment in this case came as the result of the investigation into the death of Ben Novack, on July 12, 2009, who was murdered in his guest suite at the Rye Town Hilton Hotel in Rye Brook, New York. Prior to Mr. Novack's murder, on April 5, 2009, Bernice Novack, who was Ben Novack's mother, was found dead in her home in Fort Lauderdale, Florida.

According to the Government, Ms. Novack actively participated in a conspiracy which involved, in part, the hiring of men to assault Bernice Novack, and  Ben Novack (and related charges), which resulted in their deaths and her subsequent laundering and interstate transport of assets belonging to Ben Novack and/or his company, Novack Enterprises.

### 2.        Pre Sentence Investigation Report

The Pre-Sentence Investigation Report, dated December 4, 2012 and transmitted to counsel on the same day, calculated the advisory guideline as follows,  for a total level of 44:

<u>I. Group One: Felony Murder of Bernice Novack</u>

Base Offense Level: As the defendant  was convicted of the felony murder of Bernice Novack, the applicable  guideline is §2A1.1 and results in a base offense level 43 pursuant to §2A1.1(a).                                                                      43

Specific Offense Characteristic: None.                                          0

Victim-Related  Adjustments: None.                                              0

Adjustments for Role in the Offense: None.                                0

Adjustment for Obstruction  of Justice: None.                            0

Adjusted Offense Level (Subtotal):                                           <u>43</u>

## II. Group Two: Interstate Transportation of Stolen Property/Money Laundering

Base Offense Level: The guideline for a violation of 18 USC 1957 is found in §2S1.1, which provides for a base offense level of 8 plus the number of the offense levels from the table in §2B1.1 corresponding to the value of the laundered funds. The amount of the laundered funds was more than $70,000 but less than $120,000 which results in increase of 8 levels for a total of 16.                    16

Specific Offense Characteristic: Because the defendant knew that the laundered funds were the proceeds of, or were intended to promote a crime of violence, 6 levels are added pursuant to §2S1.1(b)(1)(ii).                    6

Specific Offense Characteristic: Because the defendant was convicted under 18 USC 1957, 1 level is added pursuant to §2S1.1(b)(2)(A).                    1

Victim-Related Adjustments: None.                    0

Adjustments for Role in the Offense: None.                    0

Adjustment for Obstruction of Justice: None.                    0

Adjusted Offense Level (Subtotal):                    <u>23</u>

## III. Group Three: Witness Tampering

Base Offense Level: The guideline for violations of 18 USC 1512(b) is found in §2J1.2, which provides for a base offense level of 14, pursuant to §2J1.2(a).        14

Specific Offense Characteristic: Because the offense involved threatening to cause physical injury to a person in order to obstruct the administration of justice, 8 levels are added pursuant to §2J1.2(b)(1)(B).                    8

Victim-Related Adjustments: None.                    0

Adjustments for Role in the Offense: None.                    0

Adjustment for Obstruction of Justice: None.                    0

Adjusted Offense Level (Subtotal):                    <u>22</u>

## IV. Group Four: Offenses Against Ben Novack

Base Offense Level: The guideline for violations of 18 USC 1959 (Violent Crimes in Aid of Racketeering Activity) is found in §2E1.3. Pursuant to Application Note 1, if the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used. The most analogous federal offense for the

most serious count is assault which is found in §2A2.1. Pursuant to §2A2.1(a)(2), the base offense level is 27.                                                          27

Specific Offense Characteristic: Because the victim sustained permanent or life-threatening bodily injury, 4 levels are added pursuant to §2A2.1(b){1).          4

Specific Offense Characteristic: Because the offense involved the offer or the receipt of anything of pecuniary value for undertaking the murder, 4 levels are added pursuant to §2A2.1(b)(2).                                                                    4

Victim-Related Adjustments: None.                                                         0

Adjustments for Role in the Offense: None.                                             0

Adjustment for Obstruction of Justice: None.                                          0

Adjusted Offense Level (Subtotal):                                                      <u>35</u>

| <u>Multiple Count Adjustment</u> (See §3D1.4) | | <u>Units</u> |
|---|---|---|
| Adjusted Offense Level for Group One | 43 | 1 |
| Adjusted Offense Level for Group Two | 23 | 0 |
| Adjusted Offense Level for Group Three | 22 | 0 |
| Adjusted Offense Level for Group Four | 35 | 1/2 |
| Total Number of Units | | <u>1 1/2</u> |
| Greater Adjusted Offense Level | 43 | |
| Increase in Offense Level | +1 | |

Combined Adjusted Offense Level:                                                      44

Adjustment for Acceptance of Responsibility: None.                             0

Adjusted Offense Level:                                                                     44

Chapter Four Enhancements: None.                                                     0

**Total Offense Level:**                                                                      **<u>44</u>**

Since Ms. Novack lacks any criminal history, she is in a Criminal History Category I. An adjusted total guideline level of 44 results in an advisory guideline range of life.

**3. Defendant Novack's Objections to the Total Advisory Guideline Level Contained in the Pre-sentence Investigation Report**

The defendant interposes the following objections to the Department of Probation's calculations, and suggests that the Total Advisory Guideline should be a Level 41 after a downward adjustment of 3 levels, for a total advisory guideline range of 324-405 months incarceration.

**A.      <u>The Defendant is Entitled to a Minor Role Downward Adjustment</u>**

The Department of Probation failed to assign any decrease to the total advisory guideline under Group I, Felony Murder of Bernice Novack. See Presentence Report, p. 23, ¶76. It is respectfully submitted that Ms. Novack should get such reduction, as she was substantially less culpable than the other participants in the crime.  The evidence adduced at trial established that the defendant has between a minimum and minor role in the felony murder of Bernice Novack, pursuant U.S.S.G §3B1.1.

In charging the defendant with felony murder of Ben Novack, a charge which Ms. Novack was ultimately acquitted, the Government proffered a detailed case of the defendant's physical presence and participation in his assault and death. Indeed, both Alejandro Garcia and Joel Gonzalez, the admitted killers of Ben Novack, placed Ms. Novack in the hotel suite at the time of their assault upon him. Notwithstanding their differing accounts of the details of their own participation in the assault, essentially one blaming the other for assaulting Mr. Novack while minimizing their own conduct, they both testified that Ms. Novack allowed them in some way to enter the suite while Mr. Novack slept and she remained present, gave orders to them, gave them a

pillow to muffle Mr. Novack and ultimately gave them Mr. Novack's diamond bracelet prior to leaving the suite.

In contrast to the Government's case which alleged the defendant's physical presence and participation in the death of Ben Novack,  the same cannot be said of the defendant's role in the felony murder of Bernice Novack.[1] On April 5, 2009, Bernice Novack was found  deceased inside of her home. Alejandro Garcia testified that he was hired by the co-defendant, Cristobal Veliz to assault "the old lady" because Mr. Veliz informed him that, among other reasons, Bernice Novack was mean to Narcy Novack and she instructed Ben to beat Narcy Novack daily  because "that is what their religion commanded".  Mr. Garcia testified that, after lying in wait for Bernice Novack to come home, he snuck up from behind her car and struck her in the head and face multiple times with a monkey wrench while she was exiting her parked car in her garage. Although she was able to make it out of her car and inside her home, she ultimately collapsed and died in the kitchen area where she was later found. Mr. Garcia was adamant under repeated questioning during trial that he was not hired to kill Bernice Novack, only to break her teeth or otherwise injure her.  He insisted that she was still alive and moving when he fled from the scene.

While the jury found Narcy Novack guilty of the felony murder of Bernice Novack, there was no allegation or evidence adduced at trial that the defendant was present at the time of the assault. The evidence against the defendant was entirely circumstantial. Alejandro Garcia, the Government cooperating witness, who admitted to assaulting Bernice Novack, testified that he never had any meeting, conversation, or any other interaction with Narcy Novack in the planning or execution of the plan to assault or kill Bernice Novack. In fact, he had no personal knowledge as to Narcy Novack's involvement whatsoever. Indeed, no witness called at trial testified that they

---

[1] This should not be construed in any fashion as an admission by the defendant. She maintains her innocence as she has throughout the history of this matter. This argument for reduction is based upon the evidence of the defendant's role in the felony murder of Bernice Novack, presented at trial.

had any personal knowledge of Narcy Novack's participation in Bernice Novack's death. The evidence of the defendant's involvement in the death of Bernice Novack was limited in large part to statements of motive attributed to her by the co-defendant, Cristobal Veliz, and phone conversations in which co-defendant Veliz allegedly obtained directions and other identifying information pertaining to Bernice Novack's residence and car from "mi nina". Other Government witnesses were called to testify about Narcy Novack's alleged statements professing her dislike of Bernice Novack. The overwhelming quantity of the evidence at trial relating to the felony murder of Bernice Novack pointed to co-defendant Veliz's planning, hiring and participation in the plot to assault Bernice Novack. Narcy Novack's role was certainly less culpable than the others, including but not limited to Alejandro Garcia, Melvin Medrano, Francisco Picado, and indeed, Cristobal Veliz.

It is therefore respectfully submitted that Narcy Novack was between a minimum and minor participant[2] as defined pursuant to U.S.S.G. §3B1.2 and should be granted a downward 3 level adjustment to the Guideline number. "The determination whether to apply [a minimal or minor role adjustment], or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the case." USSG §3B1.2, comment. (n.3(C)).

The defendant bears the burden of proving by the preponderance of the evidence that he is entitled to a mitigating role adjustment. *See* United States v. Carpenter, 252 F.3d 230, 234 (2dCir. 2001); United States v. Brubaker, 362 F.3d 1068, 1071 (8th Cir. 2004); United States v.Posada-Rios, 158 F.3d 832, 880 (5th Cir. 1998). The Second Circuit has held that in "evaluating a

---

[2]  U.S.S.G. §3B1.2  defines "Minimal Participant" as a defendant  "who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a **role** as minimal participant."; and a "Minor Participant" as  "a defendant who is less culpable than most other participants, but whose role could not be described as minimal."

defendant's role," the sentencing court should consider factors such as "the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." <u>United States v. Yu</u>, 285 F.3d 192, 200 (2d Cir. 2002); U.S. v. Delacruz, 371 Fed.Appx 245 (2d Cir. 2010)

     In <u>U.S. v. White</u>, 113 F.3d 1230 (2d Cir. 1997), the defendant was convicted of conspiring and attempting to obstruct commerce by robbery, 18 U.S.C. §1951, and of using and carrying a firearm during the commission of the crimes, 18 U.S.C. §924(c). His co-defendants, in addition to these charges, were convicted of various other crimes, including murder in aid of racketeering, 18 U.S.C. §1959. The Second Circuit Court affirmed the District Court's denial for a minor-role downward adjustment, stating, "Even assuming *arguendo* that White's co-conspirators were more culpable in the attempted ...robbery, that alone would not furnish a basis for a minor-role adjustment. See <u>United States v. Thompson</u>, 76 F.3d 442, 457 (2d Cir.1996). Moreover, White's culpability in the attempted robbery was not minor on any measure: the evidence showed that he originally suggested the robbery plan, actively planned the robbery using inside knowledge of the plant, opened the plant door, and served as a lookout for the police. There was no error in denying him the minor-role adjustment."

     <u>White</u> is distinguishable from the instant case in that  Ms. Novack's co-conspirators were not only more culpable, but that there was no direct evidence of Ms. Novack's participation in the assault itself. She was not present during any of the multiple meetings, testified to during trial, planning the assault nor was she ever present when the assault occurred.

     In <u>U.S. v. Castano</u>, 234 F.3d (2d Cir. 2000), the defendant plead guilty to using a telephone in a murder for hire plan in violation of 18 U.S.C. §1958. At sentence the Court granted the defendant a downward adjustment based upon her cooperation with the Government but denied her

application for a minor role reduction. The Court held that even if the defendant properly defined the average participant in murder-for-hire schemes as those who hire and those who murder, the District Court ruling was not erroneous in finding the defendant less culpable than the average participant because the defendant performed a number of functions in the murder such as showing a photograph of the victim and pointing the victim out to the co-conspirators as well as coordinating payment for the murder.

Castano is also distinguishable to the instant case, because in addition to Ms. Novack's co-conspirators being more culpable than she, there was no direct evidence adduced at trial of Ms. Novack, in the assault of Bernice Novack, committing any of the acts attributed to the defendant in Castano.

Due to the foregoing, the defendant has proven by a preponderance of the evidence that she is entitled to a downward departure for her mitigating role in the felony murder of Bernice Novack. It is therefore respectfully suggested that the total advisory guideline for the defendant should be a Level 41, with a total recommended sentence of 324-405 months incarceration. The defendant requests a sentence of 324 months.

### 4. Analytical Framework

As the Court is undoubtedly aware, on January 12, 2005 the United States Supreme Court inexorably altered the doctrinal landscape of federal sentencing with its decisions in United States v. Booker, 543 U.S. 220 (2005). The Court in Booker made it clear that United States District Courts are no longer bound or restricted by a mandatory and unwavering application of the United States Sentencing Guidelines.

Certainly the inherent wisdom of 21 years of sage case law and academic and institutional research developed since 1987 should not be disregarded and it is anticipated that this Court, like the many other United States District Courts, will continue to seek guidance from, rely, consult

and utilize the provisions of the 1984 Sentencing Reform Act, as amended; the United States Sentencing Guidelines and the vast decisional resources interpreting and applying the above. However, with the Court's release from the mandatory strictures of the United States Sentencing Guidelines, this Court may more broadly exercise its discretion and fashion an individualized sentence bounded by "reasonableness." When analyzed through the lens of offense characteristics, offender characteristics, and the requirements of 18 U.S.C. §3553(a) it is submitted that a sentence of 9 to 11 years is wholly and disproportionately unreasonable.

Adding more substance to the Booker analysis in 2007, the United States Supreme Court decided Rita v. United States, 551 U.S. 447 (2007) and Gall v. United States. As the Court stated in Rita: "The District Courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing . . . . The courts of appeals review sentencing decisions for unreasonableness. These features of the remaining system, while not the system Congress enacted, nevertheless continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary."

Recently, the Supreme Court has explained that, as a necessary corollary to the constitutional proscription on treating the Guidelines as mandatory, sentencing courts "may not presume that the Guidelines range is reasonable." Gall v. United States, 128 S.Ct. at 596-97; see Rita v. United States, 127 S.Ct. at 2465 (noting that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply").

As the Second Circuit noted in United States v. Jones, 523 F.3d 104, 107 (2nd Cir. 2008): "In short, while a sentencing court is statutorily obligated to give fair consideration to the Guidelines before imposing sentence, [citation omitted] in the end, it must make an "individualized assessment" of the sentence warranted by § 3553(a) based on the facts presented." It is

undisputable that the Supreme Court has clearly signaled that district courts enjoy considerable discretion in identifying the grounds that can justify a non-Guidelines sentence.  Indeed, even well before <u>Booker</u> and its progeny, Courts were free to consider an array of factors when imposing a sentence.  See, e.g. 18 U.S.C. §3661, which states: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

**5. Sentencing Considerations**

It is respectfully requested that the Court consider, along with the United States Sentencing Guidelines, the following factors and analysis:

**A.      18 U.S.C. § 3553**

Title 18 U. S. C. A. §3553(a) provides:

> Factors to be considered in imposing a sentence:
>
> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to pro-mote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;

11

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

\*\*\*

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense."

As a result of Booker and its progeny, no longer are courts *required* to impose a sentence "within the range" as provided for in the United States Sentencing Guidelines and as previously

12

required by 18 U.S.C. §3553(b)(1).   Courts may now take into consideration the myriad of sentencing factor historically considered under 18 U.S.C. §3553.

The effect of <u>Blakely</u>, <u>Booker</u>, and <u>Rita</u>, when read together upon an individual sentence cannot be understated. The practical effect of the <u>Blakely</u>, <u>Booker</u>, and <u>Rita</u> trilogy is to move away from a mechanistic, de jure, dogmatic or psychological adherence of following the federal sentencing guidelines without considering individualized notions of fairness and justice. In light of the rendering of the federal sentencing guidelines advisory, this individualized sense of fairness and justice is the key component to any sentencing. Defendant submits that such a task, taken to its logical conclusion in light of relevant sentencing factors, supports her requested sentence of 324 months incarceration. These abstract notions, coupled with the facts before the Court, including Ms. Novack's background, age and physical condition support Ms. Novack's requested sentence. The discretion for the imposition of mercy, restored by <u>Blakely</u>, <u>Booker</u>, and <u>Rita</u>, is indeed a legitimate sentencing consideration.

### B. Parsimony Provision

Initially, we would like to stress the importance of the parsimony provision of the 18 U.S.C. §3553.  That provision provides that "The court **shall** impose a sentence sufficient, **but not greater than necessary**, to comply with the purposes set forth in paragraph (2) of this subsection. (Emphasis added).  Thus, the defense posits that the Court is statutorily bound **not** to impose a sentence greater than what would be necessary to comply with the relevant sentencing provisions discussed below. In <u>United States v. Wilson</u>, Case No. 2:03-CR-00882 (D. Utah Jan. 13, 2005) the court stated, "It is possible to argue that this provision requires the courts to impose sentences below the Guidelines range, because Guidelines sentences are not parsimonious." <u>Id</u>. at 21.  In <u>United States v. Brown</u>, 2005 WL 218741 (Feb 10, 2005) the court viewed the parsimony provision as *requiring* an analysis of all guideline related and non-guideline related sentencing

13

factors. Indeed, in <u>United States v. Castillo</u>, 460 F.3d 337, 354 (2d Cir.2006) the court reasoned that the parsimony provision of 18 U.S.C. §3553 required the court to impose a sentence "sufficient, but not greater than necessary" to comply with the objectives of sentencing as enumerated in 18 U.S.C. §3553.  See also, <u>United States v. Ministro-Tapia,</u> 470 F.3d 137 (2nd Cir. 2006.)

Years ahead of his time, the Honorable Jack Weinstein of the United States District Court for the Eastern District of New York wrote: "A key provision [of sentencing] embodies the concept of "parsimony," a principle of the American Bar Association Standards for Criminal Justice. *See* American Bar Association, Standards For Criminal Justice, Chapter 18, "Sentencing Alternatives and Procedures", 18- 3.2(iii) ("Parsimony in the use of punishment is favored. The sentence imposed should therefore be the least severe sanction necessary to achieve the purposes for which it is imposed ...") (1993). See also Richard S. Frase, *Sentencing Guidelines in the States: Lessons for State and Federal Reformers,* 6 Federal Sentencing Reporter 123, 124 (1993). This principle, when applied to interpretation of criminal statutes, is known as lenity. "The Court will not interpret a federal criminal statute so as to increase the penalty ... when such an interpretation can be based on no more than a guess as to what Congress intended." <u>United States v. Abbadessa</u>, 848 F.Supp.2d 369, 378 (E.D.N.Y.1994). *See also* <u>United States v. Granderson</u>, 511 U.S. 39 (1994).  We posit that 3553(a) adopts a principal of "leniency" whereby a sentence should be sufficient but not greater than necessary to comply with the purposes set forth in paragraph 2 of the same subsection. Those purposes are (1) just punishment or retribution and promotion of respect for the law, which the <u>Chaney</u> court called community condemnation or reaffirmation of community norms; (2) adequate deterrence from criminal conduct, presumably both special deterrence aimed at the sentenced prisoner himself and general deterrence aimed at those in the class of potential violators of the same statute; (3) protection of the public, which could be

14

redundant of deterrence but in context probably means by isolation, which in other discussions is called incapacitation; and (4) rehabilitation." U.S. v. Sart, 29 F.Supp.2d 592 (D.Alaska,1998), *reversed on other grounds.*; *See also* U.S. v. Phelps, 366 F.Supp.2d 580, (E.D.TN 2005.)

We believe that a strong and persuasive argument exists that the parsimony provision of 18 U.S.C. §3553 requires that the Court impose the minimum sentence possible under the circumstances taking into account all of the aforementioned factors. We submit that the minimum sentence possible under the within circumstances is 324 months.

### 6.   **Defendant's History**

The defendant was born in Ecuador on November 28, 1956 and immigrated to the United States approximately 34 years ago with her family and is a naturalized United States citizen. Her family is a large one and has siblings living in both the United States and Ecuador.

She was married to Ben Novack for approximately 19 years at the time of his death. Their marriage was eccentric and turbulent. Ben Novack physically struck the defendant and had affairs during the course of their marriage. As one can imagine, his sexual fetish for amputees was another significant issue for the defendant during the marriage and she demanded that he obtain professional counseling for it. Notwithstanding the tumultuous nature of their marriage, Ben Novack, with the assistance of the defendant, created a very successful convention business in their twenty three plus years together. Despite the Government's belief to the contrary, Ms. Novack was given significant responsibilities in a management position of the company. Some her responsibilities included the booking of the convention guests, coordinating with venue catering and dealing with VIP customer service issues, especially those involving Spanish speaking customers.

She has a daughter from a previous marriage, May Abad. As the Court is aware, there is an adversarial relationship between them. This adversarial relationship pre-dates Ben Novack's death and in fact goes back to Ms. Abad's childhood.

This case constitutes the defendant's first arrest and conviction.

### 7.      The Defendant's Age Essentially Converts the Minimum Term of Incarceration Into a Virtual Death Sentence

As this Court is aware, Narcy Novack is a 56 year old woman. Should the Court impose the minimum sentence of 324 months, she will still likely die in prison from old age. Even if she were able to complete a sentence of 27 years, she would be released from prison an elderly woman with virtually no possessions or home. Her future is in all respects bleak and limited even if the Court were to impose the requested sentence.

### <u>CONCLUSION</u>

For all of the reasons stated herein, Ms. Novack's requested sentence of 324 months is a fair, reasonable, equitable and balanced approach, both abstractly and specifically, to sentencing and all of the competing interests and consideration undertaken when imposing sentence. A sentence as requested by the defendant is sufficient to punish her and deter her from committing any future crimes, while at the same time offering her a chance of reformation and rehabilitation. Therefore, all goals of sentencing will be accomplished with a sentence as requested.

Dated: White Plains, New York
        December 9, 2012

                                        Respectfully submitted,


                                        By: _____/s/_____
                                              Howard E. Tanner, Esq.

16

Tanner & Ortega, L.L.P.
30 Vesey Street
Penthouse Suite
New York, NY 10007
(212) 962-1333
Attorney for Defendant Narcisa Veliz Novack

cc:     AUSA Elliott Jacobson (By Email/PDF and Regular Mail)
        Michael Keesee, Esq. (By Email/PDF and Regular Mail)